SECOND DIVISION
March 27, 2007

No. 1-05-1951

| | | |
|---|---|---|
| OGGI TRATTORIA AND CAFFE, LTD., | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| ISUZU MOTORS AMERICA, INC., | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Michael T. Healy, |
| | ) | Judge Presiding. |

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Oggi Trattoria & Caffe, appeals an order of the trial court which granted summary judgment in favor of defendant, Isuzu Motors America. Plaintiff filed suit against defendant[1] under the Magnusson-Moss Warranty-Federal Trade Commission Improvement Act (Act or Magnusson-Moss Act) (15 U.S.C. §2301 *et seq.* (2000)) for breach of express and implied warranties when its vehicle required numerous repairs.

Plaintiff, an Illinois corporation, purchased a 2000 Isuzu Rodeo on October 11, 2000, for $29,264.32 from Forest Imports, Inc. The vehicle was manufactured by defendant. The vehicle was accompanied by an express limited written warranty which covered all parts and components (with some exceptions) for 36 months or 50,000 miles, whichever occurred first. Additionally,

---

[1]The dealership, Forest Imports, Inc., was also a defendant in the suit but was dismissed prior to the entry of summary judgment.

1-05-1951

the written warranty provided a separate power train warranty that covered the engine and transmission for 120 months or 120,000 miles, whichever occurred first. The warranty further stated:

> "What is Not Covered:
>
> Also failure due to improper maintenance per lack of required maintenance which was the direct cause of the part failure is not covered."

The warranty also indicated that the owner of the vehicle was responsible for the vehicle's maintenance and for keeping maintenance records and that the failure to properly maintain the vehicle would void the warranty.

Shortly after taking possession of the vehicle, plaintiff began experiencing problems with the vehicle and took it in for service on several occasions. The vehicle was tendered for service to the dealership between December 18, 2000, and January 25, 2001, for complaints of a fuel odor inside the vehicle, a noisy blower motor, and the 4X4 not engaging. All of the necessary repairs were made. Subsequently, in July 2001, the vehicle was tendered for service for problems with the air conditioner, exhaust, and fuse. In August 2001, the vehicle was serviced for a leaking gas cap, which caused the "check engine" light to stay illuminated, and a rattling noise in the rear hatch. The vehicle was okay until October 2002, when plaintiff had it serviced for an illuminated ABS light, damaged window trim, broken window switch, and noisy front doors. Thereafter, in September 2003, the vehicle was serviced for broken/damaged seat belts, broken mirror bezel clip, inoperable compact disc player, damaged door checks, loose weather

1-05-1951

stripping, and an illuminated "check engine" light due to a malfunctioning oxygen sensor. Plaintiff's limited warranty expired on October 11, 2003. Thereafter, the vehicle's transmission was replaced by defendant between October 15 and October 24, 2003, under separate warranty. Subsequently, the vehicle was again serviced on two occasions for an illuminated "check engine" light. Plaintiff attempted to revoke its acceptance of the vehicle on February 10, 2004, but defendant and the dealership refused that revocation.

On or about February 20, 2004, plaintiff filed a three-count complaint in the circuit court, alleging it incurred substantial damages due to the defendant's breach of its written warranties (count I), that defendant breached the implied warranty of merchantability under both the Illinois Uniform Commercial Code (Illinois UCC) (810 ILCS 5/2-100 *et seq.* (West 2000)) and the Magnusson-Moss Act (count II), and it incurred substantial damages due to defendant's failure to accept its revocation of acceptance (count III).

Plaintiff tendered Frank Russo, who was employed by plaintiff as its manager, for a deposition on November 29, 2004. We note, however, that the record does not contain a complete copy of his deposition testimony, and that only excerpts are included as exhibits to the various pleadings which were filed in the trial court. An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record on appeal, it will be presumed that the order entered by the trial court conformed with the law and had a sufficient factual basis. Foutch, 99 Ill. 2d at 391-92. Doubts that arise from the incompleteness of the record will be resolved against the appellant. Foutch, 99 Ill. 2d at 392.

3

Defendant subsequently filed a motion for summary judgment on February 3, 2005, alleging that plaintiff failed to produce any evidence that it breached its written or implied warranties of merchantability.

Defendant tendered the certified statement of Danny Cornelius, who was defendant's employee. Cornelius stated that his responsibilities included all of the technical concerns for the Midwest/West Region for Isuzu vehicles, including the 2000 Rodeo. He noted that each of the problems with the vehicle was a one-time problem and was promptly serviced without any charge to plaintiff. Cornelius indicated that the vehicle was brought in for service on July 23, 2004, and when he checked the engine, he discovered there was no oil. Russo was advised that no work would be performed because of the lack of oil. Cornelius subsequently inspected the vehicle on November 8, 2004, while the vehicle was on the ground and a lift. The vehicle was fully inspected, including the engine, transmission, tires, and underbody. According to Cornelius, the inspection revealed that the battery was dead, and after recharging it, the engine rods began to knock loudly, which precluded a test drive. The engine was inspected for the source of the knocking, and Cornelius concluded with "a reasonable amount of mechanical certainty" that there were no causes found for the rods knocking other than the owner's failure to properly maintain and service the vehicle, including the 15,000- and 30,000-mile maintenance, regular oil and filter changes, and maintaining proper oil levels.

In its response to defendant's motion for summary judgment, plaintiff argued that it presented sufficient evidence demonstrating genuine issues of fact, namely: (1) whether the defects were covered by defendant's express limited written warranty; (2) whether plaintiff

4

complied with the terms of the express limited written warranty; and (3) whether defendant remedied the vehicle's defects within a reasonable period of time or number of repair attempts.

Plaintiff attached Russo's affidavit in support of its response. Russo averred that he had personal knowledge of the facts regarding the vehicle and any maintenance performed on it; that he performed all regular maintenance on the vehicle as recommended by the written warranty and the owner's manual; he never misused, abused or neglected the vehicle in any manner; and the vehicle was never damaged in an accident, vandalized, or modified in any way. Finally, Russo averred that all warranty service of the vehicle was performed by an authorized Isuzu dealership or service facility.

On April 13, 2005, the trial court granted defendant's motion for summary judgment on all counts, finding that defendant repaired/replaced any condition under its warranty within a reasonable period of time. No hearing transcripts are included in the record, and the court did not issue a memorandum opinion.

On appeal, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment. Specifically, plaintiff argues that the evidence established that defendant breached its limited written warranty under the Magnusson-Moss Act in that the written warranty covered the engine and transmission for 120 months or 120,000 miles; given the extensive repair history and amount of time the vehicle was out of service, a question of fact exists as to whether defendant breached its warranty; a question of fact exists regarding "defendant's purported abuse defense"; defendant's witness lacked credibility; defendant failed to file a proper affidavit in support of its motion; and Norman v. Ford Motor Co., 160 Ill. App. 3d 1037 (1987), and Alvarez

1-05-1951

v. American Isuzu Motors, 321 Ill. App. 3d 696 (2001), are inapposite. Additionally, plaintiff contends that defendant breached its implied warranty of merchantability under the Magnusson-Moss Act.

Before we reach the merits of the appeal, we must first address defendant's contention that it should be dismissed due to plaintiff's "complete disregard for the appellate court [*sic*] procedures."

A review of the appellate procedural history of this case indicates that plaintiff requested several extensions of time for filing the record, which were granted by this court; defendant filed several motions to vacate the extensions granted to plaintiff and to dismiss the appeal, all of which were repeatedly denied. The appeal was subsequently dismissed on April 10, 2006, for plaintiff's failure to file the record, but that order was vacated and the appeal reinstated on April 20, 2006. A similar sequence of events occurred with respect to the filing of appellant's brief: plaintiff requested an extension for filing, and defendant filed motions to deny the extension. This court ultimately granted plaintiff's request for an extension and denied defendant's motion to deny the extension. Defendant then requested two extensions of time for filing its brief, both of which were allowed. It is clear that both parties requested and were granted extensions of time to file various documents with this court, as is within the court's discretion to grant pursuant to Supreme Court Rules 323, 326 and 343. 166 Ill. 2d R. 323; 155 Ill. 2d Rs. 326, 343. "No limit is placed on the number of times a litigant can seek and be granted further extensions of time by the reviewing court." Renfield Importers, Ltd. v. Modern Liquors, Inc., 55 Ill. 2d 546, 548 (1973). As such, we decline to dismiss this appeal and shall address the issues.

Plaintiff first contends that the trial court erred in granting summary judgment as to whether defendant breached its express limited written warranty.

Summary judgment is appropriate when the pleadings, depositions, and other evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2004). Summary judgment is a drastic means of resolving litigation and should only be allowed when the right of the moving party is clear and free from doubt. Shoop v. DaimlerChrysler Corp., No. 1-05-3213, slip op. at p. 3 (March 1, 2007); Bier v. Leanna Lakeside Property Ass'n., 305 Ill. App. 3d 45, 50 (1999). Our review of a grant of summary judgment is *de novo*. Woods v. Pence, 303 Ill. App. 3d 573, 576 (1999). We may affirm on any ground supported by the record, even if that ground was not relied on by the trial court. Mydlach v. DaimlerChrysler Corp., 364 Ill. App. 3d 135, 159 (2005).

"Therefore, on appeal from a trial court's entry of summary judgment ***, the only issue is whether the pleadings, depositions, admissions[,] and affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Norman v. Ford Motor Co., 160 Ill. App. 3d 1037, 1040 (1987).

The Magnusson-Moss Act provides a consumer with a private cause of action against a manufacturer or retailer that fails to comply with the Act or the terms of a written warranty or any implied warranty arising therefrom. 15 U.S.C. §2310(d)(1) (2000). When the Act does not conflict with state law governing the sale of consumer products, state law applies. Bartow v. Ford Motor Co., 342 Ill. App. 3d 480, 484 (2003), citing Sorce v. Naperville Jeep Eagle, Inc., 309 Ill. App. 3d 313, 323 (1999).

7

"In a breach of express warranty action under the [Illinois UCC], plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." Hasek v. DaimlerChrysler Corp., 319 Ill. App. 3d 780, 788 (2001), citing Wheeler v. Sunbelt Tool Co., 181 Ill. App. 3d 1088, 1100 (1989); 810 ILCS 5/2-313 (West 2004). "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." Hasek, 319 Ill. App. 3d at 788.

In the case at bar, it is undisputed that an express limited written warranty existed. The warranty provided coverage for all parts and components (with some exceptions) for 36 months or 50,000 miles, whichever occurred first. Additionally, a separate power train warranty provided coverage for the engine and transmission for 120 months or 120,000 miles, whichever occurred first.

"In a suit for damages for breach of an [express written warranty], the burden of proof is on the plaintiff to show by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." Hasek, 319 Ill. App. 3d at 793. "A plaintiff must prove that the alleged malfunctioning *** [is] caused by a defect in the parts and workmanship, and that the manufacturer failed to repair or replace the parts in accordance with the warranty." Collum v. Fred Tuch Buick, 6 Ill. App. 3d 317, 322 (1972).

A review of the evidence presented in support of plaintiff's claims - the complaint, service records, deposition testimony, affidavits and other pleadings - establishes that plaintiff failed to

meet its burden. Plaintiff essentially argues that the number of times the vehicle was serviced necessarily indicates a defect with the vehicle; however, plaintiff failed to present any evidence that the repairs were necessary due to defects in the material or workmanship. See Collum, 6 Ill. App. 3d at 322; Hasek, 319 Ill. App. 3d at 792. Moreover, the record indicates that each time the vehicle was presented for service, defendant, through one of its agents, performed the necessary repairs free of charge, including the replacement of the vehicle's transmission, in accordance with the warranty terms. It can be inferred from the record that each repair was completed satisfactorily since there is no indication that the vehicle was ever serviced multiple times for the same issue. Accordingly, we find the trial court properly granted summary judgment in favor of defendant on plaintiff's claim that defendant breached its express limited written warranty.

Plaintiff next contends that defendant breached its implied warranty of merchantability. A product breaches the implied warranty of merchantability if it is not " 'fit for the ordinary purposes for which such goods are used.' " Alvarez v. American Isuzu Motors, 321 Ill. App. 3d 696, 703 (2001), quoting 810 ILCS 5/2-314(2)(c) (West 2000). With regard to automobiles, " '[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects.' " Pearson v. DaimlerChrysler Corp., 349 Ill. App. 3d 688, 698-99 (2004), quoting Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc., 342 Ill. App. 3d 150, 159 (2003). An implied warranty of merchantability applies to the condition of the goods at the time of sale and is breached only if the defect in the goods existed when the goods left the seller's control. Mattuck v. DaimlerChrysler Corp., 366 Ill. App. 3d 1026, 1037 (2006). Plaintiff is not required to prove a specific defect; rather, a defect may be proven inferentially by direct or

circumstantial evidence. Alvarez, 321 Ill. App. 3d at 703. "A *prima facie* case *** is made by proof that in the absence of abnormal use or reasonable secondary causes[,] the product failed 'to perform in the manner reasonably to be expected in light of its nature and intended function.' [Citations.]" Alvarez, 321 Ill. App. 3d at 703, quoting Tweedy v. Wright Ford Sales, Inc., 64 Ill. 2d 570, 574 (1976).

Here, plaintiff produced no evidence whatsoever that the vehicle was defective when it left the seller's control. For the most part, the repairs made shortly after plaintiff took delivery of the vehicle were minor, and plaintiff has not alleged that those defects rendered the vehicle unfit for its ordinary purpose. Nor did plaintiff present any expert testimony regarding the presence of any specific defect in the vehicle. Contrary to plaintiff's assertion, this case is analogous to Alvarez.

In that case, as in the instant case, plaintiff purchased an Isuzu Rodeo which needed repairs shortly after the plaintiff took possession of it. Over time, the vehicle was serviced several times, and plaintiff filed a two-count complaint alleging breach of the express warranty and the implied warranty of merchantability. Similarly, plaintiff merely presented a summary of the problems and times the vehicle was serviced, all of which were rectified. Alvarez, 321 Ill. App. 3d at 705. The court found that while there was no doubt that plaintiff suffered some inconvenience, the alleged defects were minor and did not affect the fitness of the product. Alvarez, 321 Ill. App. 3d at 705. We reach the same conclusion here and find that the trial court properly granted summary judgment with respect to the alleged breach of the implied warranty of merchantability.[2]

---

[2] A discussion of Norman is unnecessary to the disposition of plaintiff's issues as it

1-05-1951

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and HALL, JJ., concur.

---

involved a situation where the warranty period had expired prior to any issue arising with the vehicle.